UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30168-MAP

DUDLEY THOMPSON,
                    Plaintiff

v.

THE COCA-COLA COMPANY,
                    Defendant

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**INTRODUCTION**

The Plaintiff respectfully requests that the Court deny the Defendant's Motion for

Summary Judgment, as genuine issues of material fact remain at issue.  The following argument

illustrates these genuine issues which preclude summary judgment.[1]

**ARGUMENT**

**I.    Summary Judgment Standard**

The First Circuit has urged courts to use restraint in granting summary judgment once a

plaintiff has established a *prima facie* case of discrimination and pretext becomes the issue.

Hodgens v. General Dynamics Corporation, 144 F.3d 151, 167 (1st Cir. 1998)(internal citation

omitted).  The Hodgens court pointed out:

> Because of the availability of seemingly neutral rationales under which an
> employer can hide its discriminatory intent, and because of the difficulty of
> accurately determining whether an employer's motive is legitimate or is a
> pretext for discrimination, there is reason to be concerned about the

---

[1] References to the Plaintiff's Statement of Material Facts in Dispute, which is attached hereto, are cited as "*Pl.'s SOFs*, ¶ _."

> possibility that an employer could manipulate its decisions to purge
> employees it wanted to eliminate. *See* Weldon v. Kraft, Inc., 896 F.2d
> 793, 798 (3rd Cir. 1990)(subjective evaluations of performance 'are more
> susceptible of abuse and more likely to mask pretext' than objective job
> qualifications)(internal quotation marks omitted).

*Id.*   Other Circuit courts and the United States Supreme Court support such restraint.  The

Eighth Circuit has interpreted the U.S. Supreme Court case of Desert Palace, Inc. v. Costa, 539

U.S. 90 (2003) as "indicating that":

> [A] plaintiff bringing an employment discrimination claim may succeed
> in resisting a motion for summary judgment where the evidence, direct or
> circumstantial, establishes a genuine issue of fact regarding an unlawful
> motivation for the adverse employment action (i.e. motivation based upon
> a protected characteristic), even though the plaintiff may not be able to
> create genuine doubt as to the truthfulness of a different, yet lawful,
> motivation.

Strate v. Midewest Bankcentre, Inc., 398 F.3d 1011, 1018 (8th Cir. 2005); *see also* Holtz v.

Rockefeller & Co., 258 F.3d 62, 69 (2nd Cir. 2001).

The Massachusetts Appeals Court has reaffirmed the principle that summary judgment is

disfavored in employment discrimination cases where an employer's intent is at issue. Holland v.

BLH Electronics, 58 Mass. App. Ct. 678 (2003).  The court opined,

> We start with the proposition that 'summary judgment is a disfavored
> remedy in the context of discrimination cases based on disparate treatment.'
> Where there is conflicting evidence as to a defendant's discriminatory motive,
> courts may not dispose of such cases on the basis of affidavits.

*Id*. at 681 (quoting and citing Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass.

437, 439-446 (1995).

As shown in the following discussion, the Plaintiff's evidence raises genuine issues of

material fact regarding the Defendant's motive for terminating his employment.  Therefore, his

claims are appropriately left for a jury to decide at trial. *See* Hodgens, 144 F.3d at 167 (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 [1986]).

**II.    The Plaintiff Presents More Than Sufficient Evidence Of A Prima Facie Case Of Discrimination.**

The three-stage burden-shifting paradigm set forth by the United States Supreme Court in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies to both federal and state

discrimination claims. Gu v. Boston Police Department, 312 F. 3d 6, 11 (1st Cir. 2002)(citing

McDonnell Douglas Corp. v. Green, 411 U.S. 792 [1973] and McKenzie v. Brigham &

Women's Hosp., 541 N.E.2d 325, 326-327 [Mass. 1989]).

In Title VII and Massachusetts General Laws Chapter 151B cases involving indirect

evidence of employment discrimination based on race, ethnicity or color, the plaintiff must first

establish a *prima facie* case before the burden shifts to the defendant to articulate a non-

discriminatory reason for its adverse action, whereupon the burden shifts back to the plaintiff to

show that the defendant's proffered reason masks its true, discriminatory reason for its action.

Straughn v. Delta Airlines, Inc., 250 F.3d 23, 33-34 (1st Cir. 2001); Holland, 58 Mass. App. Ct.

at 681.

At the prima facie stage of a disparate treatment case, the plaintiff must show that (1) he

is a member of a protected class; (2) his employer took an adverse employment action against

him; (3) he was qualified for his position; and (4) his position remained open or was filled by a

person with similar qualifications. Straughn, 250 F.3d at 33 (internal citations omitted).  As

recently noted by United States Magistrate Judge Kenneth P. Neiman of this Court, the *prima*

*facie* case requires only a "'small showing' that is 'not onerous' and is 'easily made.'" Mark

Clark v. Lincare, Inc., Civil Action No. 03-30199-MAP, Report and Recommendation with

Regard to Defendant's Motion for Summary Judgment (Document No. 17), June 8, 2005

(hereinafter referred to as "Clark Report"), p. 19 (quoting Kosereis v. Rhode Island, 331 F.3d

207, 213 [other citations omitted]).

Federal and state law diverges on the issue of pretext with reference to the Plaintiff's

claims of race, ethnicity, and color discrimination. *See* Washington v. Milton Bradley Company,

340 F.Supp.2d 69, 75, n. 6 (D. Mass. 2004)(citing Joyal v. Hasbro, Inc., 380 F.3d 14, 17 [1st Cir.

2004] for the proposition that under Massachusetts law, a directed verdict may be summarily

unavailable if plaintiff shows that at least one of the defendant's proffered reasons for its action

was pretextual).

As for the Plaintiff's prima facie case, the Plaintiff asserts that, as an African-American

male of Jamaican heritage (born in Jamaica), the Plaintiff belongs to protected classes based

upon his race, color, ethnicity and/or national origin, and thus satisfies the first prong of his

prima facie burden, which the Defendant has not disputed. *See* 42 U.S.C. § 2000e-2(a)(1); G.L.

c. 151B(4)(1).   The Plaintiff satisfies the third prong given that the Defendant admits that it

terminated the Plaintiff's employment. *See Defendant's Memorandum in Support of Motion for*

*Summary Judgment* ("*Def.'s Mem.*"), pgs. 1, 16-17.  Finally, with respect to the Plaintiff's race,

color, ethnicity and/or national origin claims, the Defendant admittedly transferred a Caucasian

employee to fill the slot left open by the termination of the Plaintiff's employment

("termination"), thus satisfying the fourth prong. *Pl.'s SOFs*, ¶ 92.  Also as to the fourth prong,

the Plaintiff presents direct evidence of discriminatory animus and, therefore, the Plaintiff need

not prove that he was replaced by a Caucasian employee. *See* Cosme v. Salvation Army, 284 F.

Supp. 2d 229, 235 (D. Mass. 2003)(the court clarified that a plaintiff can prove discriminatory

animus through direct or indirect evidence. 284 F. Supp. 2d 229, 235 (D. Mass. 2003)); *see also*

Chief Justice for Administration and Management of the Trial Court v. Massachusetts

Commission Against Discrimination, 439 Mass. 729, 732 (2003)(finding that "[b]ecause the

complainants did not provide any direct evidence of discrimination, the commissioner had

applied the legal framework applicable to discrimination cases based on indirect or circumstantial evidence").

The Plaintiff, at the very least, adequately performed his job, and the Plaintiff disputed any negative evaluations. *Pl.'s SOFs*, ¶¶ 22-24, 27-31.  Managers, like Mr. Klenzing, felt that the Plaintiff's production was good and consistent.  *Pl.'s SOFs*, ¶¶ 27-30.  It is significant to note that, at least according to some managers like Jerry Goodsell, the Plaintiff was terminated not for his past performance but, instead, solely for the reason of allegedly taking time off without giving proper notice.  Moreover, the Plaintiff was not on any kind of probation when his employment was terminated.  *Pl.'s SOFs*, ¶¶ 21, 23, 24, 26, 32, 66.   However, the Plaintiff did give proper notice that he was taking time off and he did get the approval of management, notwithstanding the Defendant's position that the Plaintiff took unapproved time off.  *Pl.'s SOFs*, ¶¶ 70, 71, 76, 77, 79, 81.   In this same vein, Goodsell was the one who influenced the Plaintiff's termination of employment and the very same person who made racist remarks to and about the Plaintiff.  *Pl.'s SOFs*, ¶¶ 54-57, 85, 88-90.

## III.    The Defendant Terminated the Plaintiff Based on the Plaintiff's Race, Color, Ethnicity, and/or National Origin.

The Defendant's articulated, purportedly non-discriminatory reason for terminating the Plaintiff masks the real reason for his termination, discrimination based on race, color, ethnicity, and/or national origin and retaliation for reporting discriminatory conduct.  Having "two tasks" at this third stage, a plaintiff claiming disparate treatment must show that (1) the employer has articulated a false reason for its adverse action and (2) that "unlawful discrimination was a determinative factor" in that action." Thomas v. Eastman Kodak Company, 183 F.3d 38, 56-57 (1st Cir. 1999)(quoting Rodriguez-Cuervos v. Wal-Mart Stores, Inc, No. 98-1732, 1999 WL 373525, at *7 n. 5 (1st Cir. June 11, 1999).  A plaintiff can rely on the same evidence for both

tasks, especially where the plaintiff challenges the racial neutrality of the performance review

process upon which the employer has based its articulated non-discriminatory reason. *Id*. at 64.

In <u>Thomas</u>, the court applied this rule, finding that the plaintiff ("Thomas") had produced

evidence that would allow a jury to infer that her supervisor's "conscious animus or less

conscious bias" influenced the latter's evaluations of Thomas. *Id*.  The court found that a jury

could so find, especially given additional evidence that Thomas's supervisor treated her poorly.

*Id*. at 65.

The First Circuit Court of Appeals recently clarified, "That a defendant's discriminatory

intent, motive or state of mind is 'the determinative cause' does not imply the discrimination was

the only cause of the action." <u>Cargilia v. Hertz Equipment Rental Corporation</u>, 363 F.3d 77, 84

(1st Cir. 2004)(citing <u>Dartt v. Browning-Ferris Indus., Inc.</u>, 691 N.E. 2d 526, which stated that

"because of" does not mean "solely because of"; and <u>Lipchitz</u>, 434 Mass. at 506, n. 19 [internal

citations omitted]).

### A.    **Managers' Racial Comments**

Goodsell's discriminatory comments made to the Plaintiff about Jamaicans are clear and

direct evidence of discriminatory animus by a manager.  On one occasion, Goodsell stated to the

Plaintiff "I hate Jamaican music and Jamaicans." *Pl.'s SOFs*, ¶¶ 54.   On another occasion,

Goodsell stated to the Plaintiff "I'll deal with you, you fucking Jamaican."  *Pl.'s SOFs*, ¶¶ 56,

60.   Goodsell's statement that the Plaintiff is a "fucking Jamaican" and that he was going to

"deal with" him reveals that Goodsell was intent upon negatively affecting the Plaintiff's

employment with the Defendant. Goodsell made other harassing and threatening comments as

well. *Pl.'s SOFs*, ¶¶ 22-23, 33, 54-56. Such comments are to be construed in the light most

favorable to the Plaintiff.  *See* <u>Fernandes v. Costa Brothers Masonry, Inc.</u>, 199 F.3d 572, 589-590

(1st Cir.1999); *see also,* Straughn, 250 F.3d at 36 (a comment which otherwise may be

considered a 'stray remark' may be probative of pretext provided that there is "some discernible

evidentiary basis for assessing [its] temporal and contextual relevance").  In the light most

favorable to the Plaintiff, these are not stray remarks; rather, they relate directly to the Plaintiff's

employment termination since the Plaintiff was terminated shortly after Goodsell made the

statements and then lied about whether the Plaintiff had obtained approval for his time off.

Goodsell said that he did not give permission to the Plaintiff to take the time off that the Plaintiff

took; whereas, the Plaintiff testified that his leave had been approved and that Goodsell did not

object before the Plaintiff left for medical treatment.  *See discussion below.*

The Defendant also argues that Goodsell was not a decisionmaker, and, therefore, the

discriminatory statements of Goodsell are irrelevant.  However, the causal connection between

the decision to terminate the Plaintiff and the discriminatory comments of a non-decisionmaker

is not broken where a decisionmaker acts on biased information without conducting his own

independent investigation.  *See* Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 86-88, 87

n.4; cf. Thomas v. Eastman Kodak Co., 183 F.3d 38, 50 (1st Cir.1999)(noting in statute of

limitations context that "Title VII extends to a neutral employer decision-making process that

relies on discriminatory evaluations."), cert denied, 528 U.S. 1161 (2000).[2]  Therefore, the biases

of an employee who influences the employment decision are probative.  *See* Cariglia, 363 F.3d at

85.  And although the Defendant may take the position that it conducted an "investigation" of

the time off matter, no meaningful investigation was conducted and central to that

"investigation" was the input of Goodsell himself.  *Pl.'s SOFs*, ¶¶ 85, 88, 90.[3]  In addition, the

---

[2] The Plaintiff does not concede that Goodsell was a non-decisionmaker, since Goodsell made a recommendation to terminate the Plaintiff's employment.

[3] See detailed discussion below regarding the Defendant's lack of investigation prior to the termination of the Plaintiff's employment.

Plaintiff, when confronted upon his return from his approved leave, explained that he had

obtained approval before taking his leave. *Pl.'s SOFs*, ¶¶ 88. In the Defendant's "fact-finding"

meeting with the Plaintiff, the Defendant also failed to ask the Plaintiff for any medical

documentation in relation to his dental work. Instead of believing the Plaintiff, Goodsell's

version of events was adopted as true by the Defendant and the Plaintiff's employment was

terminated.

Goodsell also influenced the Plaintiff's termination of employment in that he had

reprimanded the Plaintiff in the past and recommended the Plaintiff's termination. *Pl.'s SOFs*,

¶¶ 22, 23, 65, 66. Thus, to the extent that the Defendant has taken the position that it was also

the Plaintiff's past performance record that factored into the Plaintiff's termination, Goodsell has

negatively impacted the Plaintiff's performance record, in addition to recommending the

Plaintiff's termination of employment.

It is also important to note that there was a racist comment made by Donna Harris, a

Caucasian supervisor, about Jamaicans, and yet Donna Harris' employment was not terminated.

*Pl.'s SOFs*, ¶ 51-53. Although there is no allegation made that Donna Harris influenced the

decision to terminate the Plaintiff's employment, her statement, and the lack of action taken

against her under a supposed zero-tolerance discrimination policy, is strong evidence of the

discriminatory atmosphere that was condoned by the Defendant. *See* Thomas, 183 F.3d at 59-62.

As noted above, the Plaintiff need not produce additional evidence of discriminatory

animus in order to establish his third-stage burden with reference to his race, ethnicity, national

origin and/or color discrimination claims. According to Thomas,

> The ultimate question is whether the employee has been treated disparately
> 'because of race.' This is so regardless of whether the employer consciously
> intended to base the evaluations on race, or simply did so because of
> unthinking stereotypes or bias.

Thomas, 183 F.3d at 58.  Even so, as in Thomas, the Plaintiff has produced ample additional

evidence, such as Goodsell's lack of neutrality, pointing to discriminatory animus. *Id*. at 64.

Courts recognize that individuals and entities perpetuate discrimination in various, often

nuanced, guises.  The Massachusetts Supreme Judicial Court effectively articulated the notion

that discriminatory treatment may manifest itself unconsciously, but is no less harmful, stating:

> Despite heightened awareness about workplace diversity and discrimination,
> an employer will not necessarily be aware of his or her bias. Stereotypical
> thinking…involves categorizing people on the basis of broad generalizations,
> not necessarily accompanied by deliberate reflection or conscious thought.
> Employment decisions that are because of stereotypical thinking about a
> protected characteristic or members of a protected class, whether conscious
> or unconscious, are actionable under G.L. c. 151B.

(emphasis in the original). Lipchitz v. Raytheon Co., 434 Mass. 493, 503 n. 16 (2001)(internal

citations omitted).

In another case addressing what a defendant-employer characterized as stray remarks,

Judge Ponsor quoted a Third Circuit case which held that one can infer age discrimination from a

euphemistic comment. Ward v. Westvaco Corporation, 859 F.Supp. 608, 618 (D. Mass.

1994)(citing Siegel v. Alpha Wire Corp., 894 F.2d 50, 55 [3rd Cir. 1990]).  A plaintiff need not

produce "smoking gun" evidence, and indeed direct evidence of discriminatory animus is rare.

*Id*. (internal citations omitted).  Applying these principles to the current case, Goodsell's intent

and/or bias in making such direct and discriminatory statements is the type of issue best left to a

jury. *See Id.*

In Aman v. Cort Furniture Rental Corporation, 85 F.3d 1074, 1084 (3rd Cir. 1996), the

Third Circuit noted the difficulty of proving discriminatory animus in modern times because, "It

has become easier to coat various forms of discrimination with the appearance of propriety, or to

ascribe some other less odious intention to what is in reality discriminatory behavior." *Id.* at

1082.  The court found to be "inherently racist" comments which referred to the black plaintiffs

as "another one," "one of them," "that one in there," and "all of you," noting that a reasonable

jury could find an implied intent to discriminate in those phrases. *Id*. at 1082.  The court stated

that,

> We simply note that the harassment of black employees,
> when combined with the discriminatory statements made
> by other Cort Furniture employees, can be viewed as making
> the plaintiffs' racial discrimination claim all the more
> compelling.

*Id*. at 1084.  The court noted that such a conclusion is buttressed, in part, by the fact that a jury

could conclude that management was aware of these acts and statements. *Id*.

In addition, Goodsell's inconsistencies and contradictions around the Plaintiff's alleged

problematic performance and the leave issue show that he held biased beliefs, whether conscious

or not, and that these beliefs sullied the manner in which he appraised the Plaintiff's performance

to the point where he discriminated against the Plaintiff. *See* Santiago-Ramos v. Centennial P.R.

Wireless, 217 F.3d 46, 56 (1st Cir. 2000)(noting that "weaknesses, inconsistencies, incoherencies,

or contradictions" in employer's reasons for adverse action can show pretext [quoting Hodgens

v. General Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998)]).  Goodsell's biased beliefs led

him to improperly find fault with the Plaintiff's performance and provide a bogus account of the

conversations he had with the Plaintiff about taking leave.  The Plaintiff's own perceptions of his

job performance, and his observations about how Goodsell treated similarly situated Caucasian

employees, merely buttress the fact that Goodsell treated him discriminatorily. *See discussion*

*below regarding similarly situated employees*.

B.    **Goodsell And Other Employees Lied About Giving The Plaintiff Approval For Time Off.**

The Plaintiff had permission to take the time off that was the subject of his termination of employment. Mr. Lane testified in his deposition that if the Plaintiff had a conversation with Goodsell, and Goodsell allowed the Plaintiff to take time off, even extra time off, then this approach would be acceptable so long as the Plaintiff spoke to his supervisor and obtained coverage.[4] *Pl.'s SOFs*, ¶¶ 61, 62. There was also no advanced notice requirement in terms of taking time off, and there was no formal policy that was implemented in terms of taking vacation time. *Id.* Most other supervisors that were deposed confirmed the same thing—that one just needs to talk to the other supervisors and make sure there is coverage. *Pl.'s SOFs*, ¶¶ 61-64.

The Plaintiff's dental work became an emergency in December of 2003, and the Plaintiff informed management that he needed to go to Jamaica to have dental work done. *Pl.'s SOFs*, ¶ 69. Earlier in December of 2003, the Plaintiff first spoke to Hector LePage, the Plaintiff's leader. *Pl.'s SOFs*, ¶¶ 70, 74-77. The Plaintiff then talked with Martin Duval, another production supervisor, about his plans for time off for dental work. *Id.* Approximately one week prior to taking leave, the Plaintiff told Duval that he may need an extension of his leave depending how the dental treatment went, and Duval gave approval but asked that the Plaintiff send him an email regarding the same. *Id.* The Plaintiff did, in fact, send Duval the requested email. *Id.* The Plaintiff also spoke to Dennis Williams, the person he believed to be his supervisor at the time, and Williams gave approval for the time off so long that the Plaintiff informed Goodsell of the same.[5] *Id.* The time off that was proposed was from December 20,

---

[4]  Lasonde said that the request for vacation time can be verbal. *Pl.'s SOFs*, ¶ 91.
[5]  Mr. Klenzing confirmed that Mr. Williams was in the Northampton plant around Thanksgiving of 2003 as a production manager. *Pl.'s SOFs*, ¶ 72.

2003 through January 9, 2004. *Id.* The Plaintiff did speak with Goodsell and explained that he

had talked to Williams and that there was coverage for the time off. *Pl.'s SOFs*, ¶¶ 70, 74-77.

Goodsell never told that Plaintiff not to take the time off, nor did he indicate that the Plaintiff

could be disciplined if he took the time off; his only concern was coverage.[6]  *Pl.'s SOFs*, ¶ 77.

The Plaintiff also talked with Sean Rutherford regarding coverage for a few hours so that the

Plaintiff could catch his flight. *Id.* Mr. Garcia, another production supervisor, also testified that

he had heard from the Plaintiff that the Plaintiff was going out on leave to get his teeth fixed.

*Pl.'s SOFs*, ¶ 74.  Garcia also testified that he knew that the Plaintiff had coverage for the time

off because Duval had told Garcia that the Plaintiff had asked for coverage.[7]  *Id.* Mr. Lane

testified that so long as prior arrangements were made regarding coverage, even with respect to

an extension of the requested time off, then this approach to arranging time off would be

acceptable. *Pl.'s SOFs*, ¶ 73.   And this is precisely what the Plaintiff did do.  He had the

approval of Duval, Williams and Goodsell and arranged coverage.[8]  *Id.*

Interestingly, it was Goodsell who said that he conducted a fact-finding meeting with the

Plaintiff, Celine Lasonde and James Lane to find out why the Plaintiff did not return to work and

whether the Plaintiff should be disciplined. *Pl.'s SOFs*, ¶ 85.  Goodsell indicated that there was

no investigation of the Plaintiff's leave issue, other than the fact-finding conference with the

Plaintiff to hear why the Plaintiff did not come back to work based on the protocol that the plant

---

[6]   According to Goodsell, the Plaintiff also contacted him around the 29th or 30th of December of 2003 and left a
voice message stating that he would need the additional time off since his dental work had not been completed.
*Pl.'s SOFs*, ¶ 81. According to Lane, if the Plaintiff had a conversation with Goodsell and Goodsell said that it was
okay if the Plaintiff needed some extra time for medical treatment, that this would be acceptable so long as there was
coverage. *Id.*   The Plaintiff could not get through to Goodsell so he left his phone numbers and received no return
call. *Pl.'s SOFs*, ¶¶ 82, 84. The Plaintiff's phone numbers were also posted in the supervisors' office. *Id.*
[7]   It is interesting to note that Goodsell testified that neither he nor anyone else at Coca Cola had knowledge that the
Plaintiff was using the time for dental work (*Pl.'s SOFs*, ¶ 74), even though other managers knew that the Plaintiff
was out for dental work and the Plaintiff told Goodsell that he was taking leave for dental work. *Pl.'s SOFs*, ¶ 77.
[8]   Lane at least admitted that some of the Plaintiff's requested vacation time had been approved. *Pl.'s SOFs*, ¶ 76.

manager had set for scheduling vacation. *Pl.'s SOFs*, ¶ 85.  Lasonde, who supposedly conducted

the fact-finding, could not give any detail about what the witnesses said in response to her

inquiry. *Pl.'s SOFs*, ¶ 88.   For example, she could not say whether Goodsell allowed the

Plaintiff to go on vacation in the conversation that occurred between Goodsell and the Plaintiff

on the 19th of December, although Lasonde admitted that this fact would have been important to

know in terms of whether to make a recommendation of termination. *Id.*  Also, Ms. Lasonde

was not sure whether she asked Sean Rutherford, Diego Garcia, Martin Duval, and Jerry

Goodsell if they talked to the Plaintiff about his taking leave prior to the Plaintiff taking his

leave. *Id.*  Lasonde also said that it would have been important to review the Plaintiff's past

performance and personnel file prior to making a decision regarding termination; yet she failed

to do so.[9] *Id.*  As part of this fact-finding, the Defendant never asked the Plaintiff for medical

records, and so he did not provide any. *Pl.'s SOFs*, ¶ 86.  However, the Plaintiff did inform the

Defendant's management that he had such documentation. *Id.*

It is also clear that Goodsell was a major contributor to the "white-paper"—the

recommendation to terminate the Plaintiff's employment. *Pl.'s SOFs*, ¶¶ 87-90.  Goodsell was

also on the plant leadership team that formulated the recommendation to terminate the Plaintiff's

employment.  Goodsell stated that the Plaintiff violated the vacation policy and that an extension

of the vacation was never discussed with the Plaintiff. *Pl.'s SOFs*, ¶¶ 87-90.  The Plaintiff, on the

other hand, has made it clear that the extension was discussed and approved.  Goodsell gave

input regarding the allegations that the vacation policy was not followed by the Plaintiff and with

regard to performance issues the Plaintiff allegedly had over the years.  *Pl.'s SOFs*, ¶ 90.

---

[9]   Lane, Williams and Goodsell said that they did not know whether the Plaintiff's work performance and history
were reviewed before the termination decision was made. *Pl.'s SOFs*, ¶¶ 88.  Lane also said that this would have
been important to do.

Lane also said that Goodsell conducted an investigation surrounding the vacation issue. *Id.*

Although the Defendant attempts to separate Goodsell from the termination process, it is clear

that Goodsell was an integral part of that process.

### C.      Comparison with Caucasian Employees

Goodsell either did not discipline similarly situated Caucasian employees for their

inability to meet standards and/or for their tardiness problems, or disciplined them much less

harshly than she did the Plaintiff.  Noting that "[r]easonableness is the touchstone," the First

Circuit stated that "comparison cases…need not be perfect replicas, but must closely resemble

one another in respect to relevant facts and circumstances." Conward v. Cambridge School

Committee, 171 F.3d 12, 20 (1st Cir. 1999)(citing Dartmouth Review v. Dartmouth College, 889

F.2d 13, 19 [1st Cir. 1989]).  The Plaintiff can show that he and Donna Harris were similarly

situated in terms of performance, qualifications, and conduct, "'without such differentiating or

mitigating circumstances that would distinguish' their situations." Smith v. Stratus Computer,

Inc., 40 F.3d 11, 17 (1st Cir. 1994)(quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 [6th Cir.

1992]).

In contrast to Smith, the current Plaintiff has produced evidence that Caucasian

employees were treated far less harshly than the Plaintiff.  Goodsell treated the Plaintiff

differently than Donna Harris based on his race, ethnicity and color.  In one example, Donna

Harris, a Caucasian supervisor, took unapproved vacation time and was not reprimanded. *Pl.'s*

*SOFs*, ¶ 47.  Goodsell would also berate and harass the Plaintiff, but not the Caucasian

supervisors. *Pl.'s SOFs*, ¶ 33.  Therefore, Goodsell faulted the Plaintiff for alleged performance

violations, but did not target Caucasian employees similarly situated to the Plaintiff.

**IV.**    **The Plaintiff Suffered A Hostile Work Environment Based Upon His Race, Ethnicity And National Origin.**

In determining whether an employer subjected a plaintiff to a hostile work environment, courts assess whether a plaintiff "was subjected to severe or pervasive harassment that materially altered the conditions of her employment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005)(citing Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S.Ct. 2275 [1998]). According to Noviello, the harassment must be "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id*. (quoting Faragher, 524 U.S. at 787). Actions such as false accusations of misconduct, Noviello, 398 F.3d at 93 (internal citations omitted), and "work sabotage, exclusion, [and] denial of support" can add to the creation of a hostile work environment. *Id*. (quoting O'Rourke v. City of Providence, 235 F.3d 713, 730 [1st Cir. 2001]).

According to Noviello, "[N]o pat formula exists for determining with certainty whether the sum of harassing workplace incidents rises to the level of an actionable hostile work environment," and "[s]uch a determination requires the trier of fact to assess the matter on a case-by-case basis, weighing the totality of the circumstances," *id*. at 94 (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 898 and n. 18 [1st Cir. 1988]), with the court first determining whether enough evidence exists which would allow a jury to find that a hostile work environment existed. *Id*. (citing Rivera-Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 [1st Cir. 2001]).

An employer that tolerates a hostile or abusive environment may be liable for either discrimination or retaliation. See Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 26 (1st Cir. 2002). The Plaintiff suffered a hostile work environment both in terms of discrimination and retaliation. The Plaintiff was exposed to racist and harassing comments from Goodsell and

15

Harris, which he resisted, and he was also exposed to the constant ridicule and harassment by Goodsell.

Goodsell's demands on the Plaintiff with reference to job performance, the racial bias he displayed, and his failure to follow the Defendant's policies and procedures, coalesced to expose the Plaintiff to a hostile work environment. *Pl.'s SOFs*, ¶ 33, 54-57, 60.  The Plaintiff found Goodsell's treatment of him, referenced in detail throughout this Memorandum and in the Plaintiff's Statement of Material Facts, to be discriminatory and hostile. *Id.*, ¶ 33, 54-57, 60.

## V.    The Plaintiff Presents Sufficient Evidence Of Retaliation.

The Plaintiff suffered retaliation by the Defendant in that he (1) engaged in protected conduct, (2) was given poor performance evaluations, upon which his termination of employment was ostensibly based, and (3) the Defendant retaliated against the Plaintiff for engaging in protected conduct by issuing poor performance evaluations and then terminating his employment, ostensibly based upon those evaluations. Noviello, 398 F.3d at 88 (stating the three-step test for retaliatory harassment under federal and state law, citing Dressler v. Daniel, 315 F.3d 75, 78 [1st Cir. 2003][Title VII] and Sullivan v. Raytheon Co., 262 F.3d 41 [1st Cir. 2001]).

The Plaintiff resisted the discriminatory and harassing comments of Goodsell and Harris regarding Jamaicans, and the Plaintiff was thereafter harassed and ultimately his employment was terminated for bogus reasons. *Pl.'s SOFs*, ¶¶ 53-60.  After Harris' comments were reported to management, Harris continued to make the Plaintiff's job environment quite hostile. *Pl.'s SOFs*, ¶ 53.  The Defendant refused or neglected to properly respond to the complaint about Harris made by the Plaintiff.  *Id.*  Instead the Plaintiff continued to be harassed by Harris.  *Id.*

The Plaintiff was targeted by management because he reported the Donna Harris situation to

Jerry Goodsell. *Pl.'s SOFs*, ¶ 53

      The Plaintiff's negative performance evaluations were a form of discrimination,

harassment and retaliation as well. *Pl.'s SOFs*, ¶ 22.  Despite the Defendant's allegations in the

Plaintiff's performance evaluations concerning tardiness, the Plaintiff was not tardy to the extent

that it affected the performance of his shift or his production.  *Pl.'s SOFs*, ¶ 23.  The Plaintiff

was not chronically tardy for his shifts as alleged by the Defendant, and was no more tardy than

other employees of the Defendant.  *Id.*  The Plaintiff was treated harshly by management in

regard to disciplinary action, based upon race, color, ethnicity and/or national origin, and in

retaliation for resisting said harassment.

      Additionally, the Plaintiff was continuously harassed by Goodsell while other production

supervisors in his position were not. *Pl.'s SOFs*, ¶ 33.  Goodsell often screamed at the Plaintiff

without reason.  *Pl.'s SOFs*, ¶ 55.  Goodsell's approval of the Plaintiff's vacation time, and then

lying about his role in approving the vacation time, was a form of discrimination and harassment.

*Pl.'s SOFs*, ¶ 55.  Goodsell told the Plaintiff that he was going to "deal with" him on more than

one occasion.  *Pl.'s SOFs*, ¶ 56.  The Plaintiff resisted Goodsell's discriminatory wrath and was

ultimately terminated for bogus reasons.  Thus, the Plaintiff has established that he suffered

retaliation at the hands of management, including Goodsell.

**CONCLUSION**

      For all of the foregoing reasons, the Plaintiff respectfully requests that the Court deny the

Defendant's Motion for Summary Judgment.

Respectfully submitted,

The Plaintiff
DUDLEY THOMPSON
By His Attorney

/s/ Michael O. Shea_____          Date: October 6, 2006
MICHAEL O. SHEA, ESQ.
BBO No. 555474
Law Office Of Michael O. Shea, P.C.
451 Main Street
Wilbraham, MA 01095
Telephone No.: (413)596-8005
Facsimile No.: (413)596-8095

Certificate of Service

I hereby certify that on this 6th day of October, 2006 a true copy of the foregoing Opposition Memorandum was served upon Counsel for the Defendant by electronic filing and by first-class, United States mail, postage prepaid.

/s/ Michael O. Shea
Michael O. Shea

18