UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

DUDLEY THOMPSON,

Plaintiff,

v.                                                    Civil Action No.  3:05CV30168

THE COCA-COLA COMPANY,

Defendant.

## DEFENDANT THE COCA-COLA COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment, The Coca-Cola Company ("Coca-Cola" or the "Company") demonstrated that the plaintiff, Dudley Thompson ("Thompson"), failed to establish his claims of race discrimination and retaliation as a matter of law.   The deposition testimony and exhibits show that there was no discrimination in the decision of Coca-Cola's Separation Review Committee to terminate Thompson after he took an unauthorized two-week vacation on eight hours' notice.

As discussed below, in a desperate attempt to survive summary judgment, Thompson relies on unsupported arguments and misrepresentations of his own deposition testimony to try to create a dispute of material fact.  A close reading of Thompson's own testimony and citations to the record belies his arguments.  As to many critical facts, Thompson's response, in short, "generates a lot of dust, but it does not further the goal of sharply focusing areas of dispute." *Brown v. Armstrong*, 957 F. Supp. 1293, 1298 (D. Mass. 1997) *(citing Kelly Trust Co. v. Doherty, Wallace, Pillsbury and Murphy, P.C.*, 811 F. Supp. 733, 734 n.2 (D. Mass. 1993).

Coca-Cola, therefore, is entitled to summary judgment on all counts as a matter of law.

## ARGUMENT

I.      **The Conclusory Statements And Unsupported Allegations In Thompson's Local Rule 56.1 Statement Do Not Create A Genuine Issue Of Material Fact.**

A.      **Thompson Admits Many Material Facts.**

Coca-Cola provided a concise but detailed statement of material facts, fully supported by citations to the discovery record as required by Local Rule 56.1. *See* Defendant's The Coca-Cola Company's Statement of Undisputed Facts Pursuant to Rule 56.1 ("Coca-Cola's Statement"). In his response, Thompson admits or lacks information to admit or deny many of these facts. Thompson admits, for instance, paragraphs 1-17 of Coca-Cola's Statement. *See* Plaintiff's Statement of Material Facts In Dispute ("Plaintiff's Counterstatement"). In particular, Thompson admits that Goodsell interviewed Thompson and recommended that Coca-Cola hire him. *See* Plaintiff's Counterstatement ¶12. This is an important fact because it shows that Goodsell, who Thompson later casts as a racist, had no racial bias against Thompson in hiring him to the Company.

Thompson also admits that the position of Production Supervisor is critical to the operation of the plant and that the position requires the Production Supervisors to arrive at least 30 minutes prior to the shift to attend a transition meeting with the outgoing Production Supervisor. *See* Plaintiff's Counterstatement ¶ ¶ 13-14.[1] This is an important fact because it shows that Thompson failed to perform the essential functions of his job as he admits to being late or missing these important transition meetings on multiple occasions. *See id.*

---

[1] Thompson also lacks information to admit or deny paragraphs 34- 45, which describe the performance history of the other Production Supervisors. *See* Plaintiff's Counterstatement ¶¶ 34-45. Thus, these facts are undisputed for summary judgment purposes. *See id.*

**B.** **Thompson Fails to Generate Disputed Facts By Relying on Unsupported Argument and Misstatements Of The Factual Record**

To be sure, Thompson does quibble over certain facts, but in most instances Thompson responds with argument rather than counterevidence. Oftentimes he mischaracterizes witness testimony to support his arguments. Local Rule 56.1 requires a party opposing a motion for summary judgment to include "a concise statement of the material facts of record as to which it contended that there exists a genuine issue to be tried, with page references to affidavits, depositions, and other documentation." The rule expressly provides that the movant's facts "will be deemed for purposes of the motion to be admitted by the opposing party unless controverted" in accordance with the rule. *See* Loc. R. 56.1. Accordingly, this Court has consistently held that the movant's statement of facts will be deemed admitted when a non-moving party "makes conclusory statements and allegations that are not supported by citations to the record," or when "the cited portion of the record often does not support the point for which it is cited." *Brown v. Armstrong*, 957 F. Supp. 1293, 1298 (D. Mass. 1997); *see also Gosselin v. Webb*, 242 F.3d 412, 414 n. 2 (1st Cir. 2001) (deeming a number of material facts admitted when denials not supported by evidence); *Preferred Mut. Ins. Co. v. Meggison*, 53 F. Supp.2d 139, 145 (D. Mass. 1999) (disregarding unsupported statements of fact). Here, Thompson falls far short of generating a *genuine* dispute of material fact.

**1.** **Thompson's Allegations of More Favorable Treatment for Donna Harris Are Unsupported.**

Thompson claims that Donna Harris was granted vacation time to which she was not entitled. He concedes that he himself does not "know" the reasons for her absences. See Plaintiff's Counterstatement ¶ 50 (admitting paragraph 50). So he relies on totem pole hearsay rumors of Hunter Alexander, Harris' peer, and Robert Comacho, Harris' subordinate, neither of

whom had any basis or business reason for knowing the reasons for her absences. *See* Plaintiff's Counterstatement ¶ 47, and Plaintiff's Memorandum In Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition Memo") at p. 14. Indeed, Thompson testified that neither Alexander nor Camacho "knew" the reasons for Harris' absences. *See* Thompson dep. at p. 89-90. Hearsay and unsupported speculation do not create a genuine dispute of fact. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (It is black letter law that "summary judgment may be appropriate if the non-moving party rests [its case] merely upon conclusory allegations, improbable intents, and <u>unsupported speculation</u>.").

Thompson, however, has not and cannot refute the fact that Harris' leave was mandated by the FMLA to care for her sick child. Coca-Cola's Statement ¶ ¶ 47-50. Thompson admits that he lacks knowledge about her Federally mandated FMLA leave and that she submitted medical documentation to justify the time off. Plaintiff's Counterstatement ¶ ¶ 48-49 Thus, the unrebutted evidence is that Harris was properly granted FMLA leave, not vacation time as Thompson has speculated. Consequently, Harris' leave cannot be compared to Thompson's and the treatment of her leave by management is not evidence of race-based preferences.

Thompson also argues that Goodsell treated Harris more favorably than Thompson because of Thompson's race. *See* Plaintiff's Opposition Memo at p. 14. However, there is no evidence that Goodsell had any direct supervisory authority over Harris. To the contrary, Thompson admits that John Newton was the Quality Assurance Manager and thus the person in charge of Harris, a Quality Assurance Supervisor, and her requests for leave. *See* Plaintiff's Counterstatement ¶ 52.

Additionally, Thompson argues that he complained about Donna Harris' "Jamaican Bimbo" comment but Coca-Cola did nothing in response. *See* Plaintiff's Opposition at p. 8. This

argument is false, and Thompson cites no evidence to prove otherwise.   In response to

paragraphs 51 and 52 of Coca-Cola's Statement, Thompson presents nearly 2 pages of argument

without any evidence disputing the salient point that the Company investigated and took

corrective action in response to Harris' comment.   *See* Plaintiff's Counterstatement ¶¶ 51-52.   In

fact, Thompson admits that Harris was given a verbal warning and was required to apologize to

the employee who heard the comment.  *See* Plaintiff's Counterstatement ¶ 52.   In response to

Paragraph 53, Thompson argues that Coca-Cola "refused or neglected to properly respond to

Thompson's complaint about Ms. Harris made by plaintiff," citing Thompson's deposition at pp.

48-49.  This testimony, however, makes no mention of Coca-Cola "refusing" or "neglecting" to

act, but, rather, Thompson testified that he felt that the complaint was not dealt with as urgently

as it should have been.  *See* Thompson dep. at pp. 48-49.   Tellingly, Thompson testified that he

did not know when the investigation into Harris' comments began and ended nor if and when the

Company took corrective action.  *See* Thompson dep. at pp. 48-49.   His subjective perceptions

of the urgency of the investigation and corrective action taken by Coca-Cola do not equate to an

objective refusal or failure to take corrective action.  There is simply no evidence supporting

Thompson's argument that Harris was similarly situated but yet treated differently because of her

race.

**2.     Thompson Cannot Credibly Dispute His Poor Performance Record.**

Thompson argues that the negative performance reviews that he received were

discriminatory,  *see* Plaintiff's Counterstatement at ¶¶ 21-22, but he submits no evidence to

support that claim.  He argues merely that he "feels" or "believes" that they were discriminatory.

*See* id. These subjective unsupported opinions are *not evidence* of discrimination.  Moreover,

Thompson concedes the important fact that his 2001 review was done by Klenzing and his 2003

review was done by Plawinski--two managers about whom Thompson has presented no evidence whatsoever of harboring a discriminatory animus.

Furthermore, a recurring theme in Thompson's negative performance reviews was tardiness. Thompson admits, as he must, that it is not unreasonable for Coca-Cola to require and expect its Production Supervisors to be on time for the critical transition meetings prior to each shift. *See* Plaintiff's Counterstatement at ¶ 25. Thompson further admits that he was late on a number of occasions, but argues that he was not "chronically" late. *See* Coca-Cola's Statement at ¶ 23 citing Thompson dep. at 53-54; 57 and 62-63. Whether Thompson was "chronically," regularly, habitually or frequently late is not material to this motion. What is material, and what is undisputed, is that Coca-Cola required Production Supervisors to attend the transition meetings, that the policy was reasonable and that Thompson nevertheless was late or missed these meeting repeatedly.

Thompson does not help his position by arguing that other employees were also tardy. See Plaintiff's Counterstatement ¶¶ 23-25. Thompson offers no support for this statement. In fact, the undisputed evidence produced by Coca-Cola shows that Production Supervisors of other ethnicities were cited for being late. *See* Coca-Cola Statement ¶ 37. This is the only evidence regarding the punctuality of other employees, and it establishes that Coca-Cola did not single out Thompson in the enforcement of this rule, the legitimacy of which is beyond dispute. Accordingly, although Thompson has argued that he disagreed with each of his negative performance evaluations, as most employees do, he has not produced any evidence that there was any discriminatory intent or even that the criticisms of his performance were incorrect or unsubstantiated.

### 3. Thompson Misstates Goodsell's Role in the Termination Decision and Exaggerates the Allegations of Offensive Comments.

In his zeal to vilify Goodsell, Thompson has misrepresented Goodsell's role in the Company's termination decision. First, Thompson quotes Goodsell's testimony in a blatantly misleading way stating that "Mr. Goodsell was asked if he had the ability to terminate an employee, and he responded, "*I'm not sure. All terminations go through HR and Corporate.*" Plaintiff's Counterstatement ¶ 90 (emphasis added). Thompson ignores questions and responses leading up to the quoted section in which Goodsell testified that "*I don't have any responsibilities nor authority to terminate anybody.*" Coca-Cola Statement ¶ 90, citing Goodsell dep. at 43. Also, Goodsell further stated that he *never* had the authority to recommend that Coca-Cola terminate Thompson. *See* Goodsell dep. at 43. It was only after answering very technical questions about Goodsell's authority does he respond that "*I'm not sure. All terminations go through HR and Corporate.*" The clear import of this testimony when read in context is that Goodsell believed that he lacked the ability to terminate employees and that such decisions were made by Corporate through the Separation Review Committee. Coca-Cola Statement ¶ 90, citing Goodsell dep. at 43.

In any event, Thompson himself concedes that his termination decision was made by the Separation Review Committee rather than Goodsell, even though he tries to magnify Goodsell's influence in the process. *See* Plaintiff's Memo at pp. 7-9. It is undisputed that Goodsell reported his conversations with Thompson concerning his last-minute vacation request and participated in a meeting upon Thompson's return. There is no evidence that Goodsell made any recommendation regarding Thompson's continued employment, and, as shown above it is undisputed that Goodsell lacked authority to terminate Thompson by himself. Coca-Cola Statement ¶ 90, citing Goodsell dep. at 43. Thompson attributes part of the reason for his

termination on the many negative performance reviews that he has received over the years. This is not evidence of discrimination because Thompson admits that many of his reviews were prepared by managers other than Goodsell, about whom there are no allegations of discriminatory animus.

Thompson also exaggerates the inappropriate statements allegedly made by Goodsell over the years. For instance, Thompson claims that Goodsell's comments were "constant," but he concedes that there were only a total of <u>three</u> offensive comments that form the basis of his claims of discrimination--two by Goodsell and one by Harris. *See* Coca-Cola Statement n. 9, citing Thompson dep. at 5-6. Two comments over the course of approximately 4 years is far from "constant."

Thompson argues that Goodsell "would also berate and harass the Plaintiff, but not the Caucasian supervisors." *See* Plaintiff's Memo at p. 14. This is a misstatement of fact because all of the other Production Supervisors stated that Goodsell yelled or raised his voice at them without making any racial comments. In particular, Marty Duval, a Caucasian Production Supervisor, testified that Goodsell yelled at him and sometimes used profanity. *See* Coca-Cola Statement ¶ 58.

The Court should, therefore, disregard Thompson's conclusory statements, unsupported allegations and intentional distortions of the record and deem Coca-Cola's factual statements as admitted in their entirety. These facts provide conclusive evidence that Goodsell did not terminate Thompson but, that the Separation Review Committee Terminated him for legitimate nondiscriminatory reasons.

**4. Thompson Exaggerates His Allegations Of Continued Harassment and Retaliation by Harris**

As purported evidence of retaliation, Thompson argues that Harris was permitted to harass him after he reported the "Jamaican Bimbo" comment. *See* Thompson's Memo at 16, *citing* Thompson's deposition at pp. 86-89. However, this portion of Thompson's testimony involved a hypothetical complaint that he made about Harris' excessive internet use and not the racially offensive statement. *See* Thompson dep. at p. 86-87. Accordingly, this misinformation is not evidence of retaliation because the alleged complaint about Harris' use of eBay is not protected activity for purposes of Thompson's retaliation claim.

**II.    Thompson Has Not Presented Direct Evidence of Discrimination**

Thompson argues that two isolated stray remarks by a non-decision-maker, Goodsell, constitutes "direct evidence" of discrimination. Thompson Memo at pp. 6-7. In support of this argument, Thompson cites *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 *(1st Cir. 2001)* as follows: "a comment which otherwise may be considered a stray remark may be probative of pretext provided that there is 'some discernable evidentiary basis for assessing [its] temporal and contextual relevance.'" Thompson, however, ignores his own legal authority because he fails to address the "temporal and contextual relevance" of Goodsell's alleged comments. In *Douglas v. J.C. Penney Co., Inc.*, 422 F. Supp.2d 260, 278 (D. Mass. 2006) (Ponsor, J), the Court addressed a similar quote to the one above from *Straughn*, and noted that the plaintiff in that case, who was represented by the same counsel as Thompson, "ignores the First Circuit's next comment: 'even if we were to assume that the assertedly offensive workplace [remark] is somehow suggestive of racial bias, it would not be significantly probative of pretext absent some discernible indication that its communicative content, if any, materially erodes the stated rationale for the challenged

- 9 -

employment action.'" By ignoring the context of the stray remarks, Thompson's counsel makes the same mistake again.

Despite his arguments of "constant" harassment, Thompson admits that there were only a total of three discriminatory comments during his nearly 4 year tenure at Coca-Cola and only two Plaintiff attributed to Goodsell. The timing and context of these two statements show that they are stray remarks rather than direct evidence because they had no impact on the termination decision of the Separation Review Committee. *See Anderson v. Home Depot, Inc.*, No. Civ. A. 02-11000-DPW, 2004 WL 42569 at *5 (D. Mass. Jan. 9, 2004) (remarks by non-decision makers "were not sufficiently tied to the decisional context to demonstrate animus for the purposes of pretext analysis, neither do they constitute direct evidence of discriminatory intent for the purposes of a mixed-motive analysis.").[2]

In one instance, Thompson says that Goodsell criticized Jamaicans and Jamaican music at the 2002 Company Christmas party. *See* Plaintiff's Counterstatement at ¶54. The other comment allegedly occurred in August or September 2003, in which Thompson says Goodsell cursed at him and offended his Jamaican Heritage in an argument. *See* Plaintiff's Counterstatement at ¶ 56. Neither of these alleged statements are temporally close to Thompson's termination in January 2004; neither involved a decision maker; and neither statement had anything to do with the Company's investigation and analysis of Thompson's last-minute request for vacation time that lead to his termination. Accordingly, these stray remarks

---

[2] *See also Wynn & Wynn, P.C. v. Mass. Comm'n Against Discrimination*, 431 Mass. 655, 667 (2000) ("Stray remarks in the workplace, statements by people without the power to make employment decisions, and statements made by decision makers unrelated to the decisional process itself do not suffice to satisfy the plaintiff's threshold burden in these cases."); *Johansen v. NCR Comten, Inc.*, 30 Mass. App. Ct. 294, 302 (1991) ("Stray remarks suggestive of impermissible bias do not constitute the sort of evidence that places a case in the mixed motive category and requires the employer to prove that its decision was made only on the basis of legitimate criteria.").

are not direct evidence of discrimination, and they do not erode the legitimacy of the Separation

Review Committee's decision to terminate Thompson.

The undisputed facts remain unchallenged that the termination decision was well-founded

on legitimate business concerns, i.e. Thompson's weeklong vacation to Jamaica on 8 hours'

notice, which he eventually extended by an additional week without confirming coverage after a

history of poor performance.

## CONCLUSION

For these reasons, Coca-Cola respectfully requests summary judgment in its favor on all

counts.

THE COCA-COLA COMPANY

By its attorneys,

Holland & Knight LLP

/s/ Damon P. Hart
Steven H. Wright (BBO No. 535185)
Damon P. Hart (BBO No. 644586)
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated:  December 6, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants on December 6,
2006.

/s/ Damon P. Hart
Damon P. Hart